2014 VT 103

### In re Musto Wastewater System and Water Supply Permit WW-1-1949

### In re Musto Wastewater System and Water Supply Permit Revocation

[106 A.3d 929]

Nos. 13-366 & 13-367

Present: Reiber, C.J., Dooley, Skoglund and Crawford, JJ.,[1] and Morse, J. (Ret.), Specially Assigned

Opinion Filed August 29, 2014

---

[1] Justice Crawford was present for oral argument, but did not participate in this decision.

*Mark L. Sperry* and *F. Rendol Barlow* of *Langrock Sperry & Wool, LLP,* Burlington, for Appellant.

*Gary R. Kupferer* and *S. Stacy Chapman, III* of *Webber, Chapman & Kupferer, Ltd.,* Rutland, for Appellees.

*William H. Sorrell,* Attorney General, and *Gavin J. Boyles,* Assistant Attorney General, Montpelier, for Appellee Agency of Natural Resources.

¶ 1. **Skoglund, J.** This case involves a disputed permit for a wastewater system and potable water supply granted to applicants David and Martha Musto for a home on Lake Bomoseen. Next-door neighbor Carolyn Hignite appeals the environmental court's decision to deny her request to revoke the permit issued to applicants in 2009, and to dismiss her direct appeal of the permit. Applicants cross-appeal from the environmental court's holding that neighbor had standing to appeal in either instance. We affirm the court's holding in both of neighbor's appeals.

¶ 2. Along with her brothers, neighbor is part owner of a lake property that has been in their family for sixty-two years. Applicants' property is a .38-acre lot on the western shore of the lake, which at present contains a single-story seasonal camp of about 960 square feet. In 2009, applicants submitted a permit application to the Agency of Natural Resources (ANR) to replace the camp's septic system and on-site water supply. On the permit application, applicants described the project as the "reconstruction of a 3 bedroom year-round single use family residence using a new wastewater disposal system and drilled bedrock water supply well."

¶ 3. ANR issued the requested permit to applicants on March 30, 2009. In August 2009, neighbor filed a petition with ANR to revoke the permit, claiming that applicants submitted false or

misleading information on the permit application regarding the number of bedrooms in the camp. ANR held a hearing in May 2010, and denied neighbor's petition to revoke the permit. Neighbor subsequently appealed the permit to the environmental court on May 27, 2010, over a year after the permit was issued to applicants. Neighbor also appealed ANR's denial of revocation on January 9, 2013. The environmental court reviewed both cases de novo but did not conduct a new hearing, instead basing its review on exhibits and testimony from the ANR hearing, as the parties stipulated. Neighbor now appeals the court's decision on both dockets. We address each appeal in turn, beginning with the appeal of the wastewater permit itself.

## I.

¶ 4. As noted above, ANR issued applicants' permit on March 30, 2009. Although in the interim neighbor filed a petition to revoke the permit with ANR, neighbor did not appeal issuance of the permit to the environmental court until well over a year after the permit was granted. The environmental court held the appeal was untimely under 10 V.S.A. § 8504(a), which provides that any person aggrieved by an act of ANR can appeal to that court "[w]ithin 30 days of the date of the act or decision." See also 10 V.S.A. § 1977 (directing that appeals of potable water supply or wastewater system permits to environmental court be made in accordance with § 8504). Because neighbor's appeal was filed with the environmental court well after thirty days had passed from the date the permit was issued, the court dismissed the appeal. Neighbor contends the dismissal was error and that her rights to due process and "fundamental administrative fairness" were violated by the court's order. We disagree.

¶ 5. Neighbor's primary argument for the timeliness of her appeal is that she did not discover one ground on which she could challenge the permit until certain evidence came to light on April 30, 2010, during the permit revocation proceedings.[2] Specifically, neighbor claims that prefiled testimony by the ANR employee who issued the permit revealed to neighbor for the first time that ANR

---

[2] Although neighbor's brief proposed six separate questions related to the direct appeal in her statement of the issues presented, the content of the brief addressed only this question: whether the environmental court erred in not finding that the thirty-day appeal window began when neighbor was "actually capable of discovering" the basis for her appeal. As a result, we address only this single issue as well.

liberally construed the definition of "bedroom" when considering the sleeping arrangements in actual use at a given property. Therefore, she argues, the thirty-day appeal period in § 8504 should not begin until the date of the prefiled testimony announcing the practice, and the trial court's failure to hold as such violated her due process right to notice.

¶ 6. ■ ■ The period to file an appeal is a jurisdictional requirement defined by statute, and failure to file within the stated timeframe results in the court's loss of jurisdiction over the matter. See *Boutwell v. Town of Fair Haven*, 148 Vt. 8, 10, 527 A.2d 225, 226 (1987) ("The failure to effect a timely appeal extinguishes subject matter jurisdiction."). In limiting the appeal period to thirty days, § 8504(a) does not deny neighbor the opportunity to appeal; rather, it simply defines the period in which such an appeal is possible. Neighbor appears to argue both that the appeal period should be subjective, beginning only when an interested party feels they have grounds to appeal, and that she was unconstitutionally denied notice of when the permit was issued.

¶ 7. ■ As we stated in *In re Cingular Wireless PCS, LLC*, "the constitutional dimension of the rights of landowners with respect to permitting on adjoining properties depends upon the legal framework applicable to the permitting scheme in question."[3] 2012 VT 46, ¶ 14, 192 Vt. 20, 54 A.3d 141. The legal framework applicable to this permit is chapter 64 of Title 10 of Vermont's statutes, which governs potable water and wastewater system permits. As neighbor acknowledges, ANR was not required under chapter 64[4] to provide neighbor with notice of either the filing of the application or the issuance of the permit. Beyond arguing that

---

[3] Neighbor argues that *Cingular Wireless* does not apply to her situation because that case involved adjoining landowners who did not have a possessory interest in the land. Neighbor claims that because a portion of the isolation zone surrounding applicants' proposed wastewater system extends onto her property, she has possessory interests in the permitted property. However, in her notice of appeal for the permit, neighbor identified herself as an "adjoining property owner," and as neither ANR nor the trial court made findings as to whether neighbor has a possessory interest in the land, we do not proceed on the assumption that she does.

[4] Although 10 V.S.A. § 1973(j)(1) now provides that where an isolation zone extends onto the property of a neighbor, as it does here, the permit applicant must send the neighbor a notice of intent to file a permit application and a site plan, this was

she discovered a particular basis for appeal only after the revocation proceeding prompted the ANR employee's testimony, neighbor raises no reason why she could not have filed her appeal earlier.

¶ 8. Furthermore, in response to neighbor's protestations over her lack of opportunity to appeal until late April 2010, we note that neighbor had notice of the issuance of the permit at the very least as early as the date on a letter that she wrote to ANR "to inform" the agency that information provided by the septic system designer was "incorrect." In the letter, neighbor states that "[t]he seasonal residence is NOT three bedrooms" and that applicants provided "inaccurate" information on their rebuilding plans, requesting that ANR "make the necessary adjustments to [applicants'] Wastewater Permit." The letter is dated June 18, 2009 — two months before neighbor filed for revocation of the permit, and almost a full year before she filed her appeal — and clearly indicates that neighbor had notice of her issues with the permit as early as that time. Further still, neighbor was accorded the opportunity to have the environmental court examine her property interests in this dispute against applicants through the court's consideration of the permit-revocation request, in which issues surrounding the validity of the permit were joined and in which neighbor requested the same relief as in the direct appeal. See *In re Hignite*, 2003 VT 111, ¶ 9, 176 Vt. 562, 844 A.2d 735 (mem.) (declining to resolve due process notice issue where claims neighbor "apparently hoped to raise with respect to the granting of the permit were essentially comparable to those underlying" secondary appeal properly before court). Therefore, we uphold the environmental court's dismissal of neighbor's direct appeal as untimely under § 8504(a).

## II.

¶ 9. Turning to the environmental court's decision on the revocation proceedings, we arrive at the heart of neighbor's objections to applicants' permit. Neighbor alleges that the application contained false and misleading information as to the number of bedrooms present in the camp, which ANR relied on in issuing the permit. On the permit application, applicants identified

---

not the rule in place at the time the permit was issued. On the date of issuance, neighbor had no right to notice under the applicable statutory framework.

the house as a "3 bedroom" residence. Neighbor claims that in doing so applicants deliberately provided ANR with false and misleading information because one of the bedrooms is a multi-use room containing several built-in beds rather than a traditional bedroom. According to neighbor, this constitutes an "egregious manipulation of the state permitting system," which resulted in applicants' success in obtaining the permit and a variance to reconstruct the building over the same approximate footprint as the current building. On appeal, neighbor objects to both, claiming that the trial court erred in not finding that there were only two bedrooms and that applicants' submission of false and misleading information about the number of bedrooms and their reconstruction plans require revocation of the permit.

¶ 10. ■ To begin, we note that neighbor's issues revolve around interpretations of ANR's Wastewater System and Potable Water Supply Rules. We have stated before that where an issue involves interpreting an agency's regulations, "our overall goal is to discern the intent of the drafters." *Conservation Law Found. v. Burke*, 162 Vt. 115, 121, 645 A.2d 495, 499 (1993). As a result, "[w]e employ a deferential standard of review of an agency's interpretation of its own regulations," which "may be overcome only by compelling indications of error." *Id.*

¶ 11. Submission of false or misleading information in support of a permit is a basis on which a permit "may" be revoked. See Wastewater System and Potable Water Supply § 1-404(b)(2), Code of Vt. Rules 12 033 001, http://www.lexisnexis.com/hottopics/codeofvtrules/ [hereinafter Wastewater Rules]. Neighbor's first claim of error — that the environmental court should have found that there were only two bedrooms instead of three, as applicants stated — relies on the definition of "bedroom" in the ANR rules. *Id.* § 1-201(a)(8). Neighbor argues that the description "any room within a building or structure that actually serves primarily as sleeping quarters," *id.* § 1-201(a)(8)(B), excludes applicants' room with built-in beds because the room also serves other functions as part of the kitchen and living room. In its decision, ANR found testimony from the Department of Environmental Conservation that this subsection "is interpreted 'liberally'" to be persuasive "because the primary objective of the Rules is to assure that there is sufficient capacity for wastewater disposal based on the use of any given building or structure." ANR further concluded that a strict interpretation of bedroom "would not assure adequate

design capacity for the actual use of the building and therefore would not be protective of human health and the environment." Under this reasoning, ANR found applicants' third room to be a bedroom under the rules, and the environmental court held that applicants did not intend to submit false or misleading information on the number of bedrooms.

¶ 12. Contrary to neighbor's assertion, we do not view the evidence before the environmental court as pointing to "the incontrovertible truth" that the "so-called third 'bedroom'" was not a bedroom under the Wastewater Rules. Neighbor's evidence consists of the real-estate listing for a two-bedroom camp, the town listing card for the property stating it had two bedrooms, testimony by the former owner in 2006 that the built-in beds were used approximately 30% of the time as sleeping space, and a declaration that a room used for other functions, like a kitchen or living room, cannot by definition primarily function as a bedroom. However, in discussions about the property prior to purchasing it, the real estate agent told applicant it slept six people comfortably. The town listing card is not a reliable source, as evidenced by the fact that neighbor's property is erroneously listed as having zero bedrooms. And to neighbor's contentions about what constitutes "primarily used," ANR pointed out that there are many examples of single-room buildings used for multiple purposes, including sleeping, such as yurts or hunting cabins. ANR further suggested that if it was to construe primary bedroom use as more than 50% of the time, properties with convertible sleeping spaces, such as pull-out sofas, would never qualify for adequate wastewater design capacity.

¶ 13. ▮ Considering the entire record and ANR's reasoning in its interpretation of the Wastewater Rules, neighbor's evidence does not demonstrate any compelling error by ANR in determining the number of bedrooms here, or prove any intentional deception of the wastewater permitting process by applicants. ANR's interpretation of its own definition of bedroom is based on a sound public-safety concern that, for permitting purposes, a determination of the number of bedrooms be "based on actual use to assure sufficient wastewater capacity." We therefore affirm the trial court's affirmance of ANR's decision not to revoke the permit for false or misleading information on the number of bedrooms in the property.

¶ 14. Neighbor's argument that applicants also submitted false and misleading information as to the "reconstruction" of their camp similarly fails. Neighbor asserts that applicants intentionally misrepresented the nature of their plans for reconstructing the camp building so as to be eligible for a variance under the Wastewater Rules. According to neighbor, when applicants described the project on their permit application as "reconstruction of a 3 bedroom year-round single family residence" requiring "a conversion from seasonal to year-round use" on the same footprint as the existing camp, they were attempting to get around the strict requirement that variances "not be granted for replacement [wastewater] systems . . . [where] the replacement system or supply will allow an increase in design flow." Wastewater Rules § 1-806(6)(B). Applicant submitted plans for municipal approval for a larger house than the current camp building. Although convoluted, neighbor appears to argue that by stating that they intended to reconstruct rather than build anew, applicants actively misled ANR into issuing the permit on the basis that the house would be on the same footprint and not increase design flow.

¶ 15. ■ We disagree. Under the Wastewater Rules, construction of a new building requires a permit, unless it qualifies as "reconstruction," which is exempt from the permit requirement if the building is reconstructed in approximately the same location and there are no changes to the operational requirements or increases in design flow. Wastewater Rules §§ 1-303, 1-304(21). In its decision, ANR stated that its interpretation of "approximately the same location" is within fifty feet of the original building footprint. Neighbor has offered no evidence that applicants are rebuilding outside a fifty-foot boundary of the original camp, or that there is compelling error in ANR's interpretation of what "approximately the same location" means. See *Conservation Law Found.*, 162 Vt. at 121, 645 A.2d at 499 (requiring compelling error to overturn agency's interpretation of its own rules).

¶ 16. ■ The simple fact that applicants have proposed a larger building plan to obtain the municipal permit does not automatically prove, as neighbor asserts, that they intended to mislead the permitting authorities into believing they were reconstructing instead of constructing so that they qualified for a variance. Neighbor points to nothing in the Wastewater Rules that prohibits reconstructing a taller building on approximately the same foot-

print. Furthermore, as we have held that applicants did not submit false or misleading information on the number of bedrooms in the camp, applicants did not submit false information that there was no increase in design flow. As for neighbor's argument that any variance must be strictly construed against the party claiming it, it is not a variance application that is before us. Rather, it is the permit application and the question on appeal is limited to whether applicants submitted false or misleading information that required revocation. To the extent that there may be conflicts between the municipal and wastewater permits, that is not at issue here.

¶ 17. As to whether revocation of the permit is required, neighbor fails to show how applicants intentionally misled the permit authority by characterizing their project as "reconstruction" for the purpose of qualifying for a variance when applicants' rebuilding plans do not appear to directly conflict with ANR's interpretation of reconstruction under the Wastewater Rules. The environmental court's denial of permit revocation is therefore affirmed on both of neighbor's claims of error.

¶ 18. As we affirm the environmental court's holdings in applicants' favor, we do not address applicants' cross-appeal that neighbor lacked standing to pursue both her appeals.

*Affirmed.*

---

[1] Justice Crawford was present for oral argument, but did not participate in this decision.